# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) Criminal Nos. 16-233 and 17-98 |
| v. | )<br>) |
| JAIME MOSQUEDA, | )<br>) |
| Defendant. | )<br>)<br>)<br>) |

## MEMORANDUM OPINION

**CONTI, Chief District Judge**

    On September 19, 2017, defendant Jaime Mosqueda ("defendant or "Mosqueda") filed a motion to revoke detention order with citation of authorities. (Crim. No. 16-233, ECF No. 29; Crim. No. 17-98, ECF No. 41). The government filed a response in opposition. After a *de novo* review of the proceedings before the magistrate judge, as well as a review of the submissions in this case, the pretrial services report prepared by the pretrial services officer, the arguments of counsel, and the hearing held on October 2, 2017, this court denied defendant's motion and ordered that defendant be detained without bond pending trial. This memorandum opinion sets forth the reasons for the court's decision, which were detailed on the record.

    On October 25, 2016, a grand jury returned an indictment at criminal action number 16-233 charging defendant with illegal reentry after deportation, in violation of 8 U.S.C. § 1326. On April 4, 2017, a grand jury returned an indictment at criminal action number 17-98 charging defendant with: (1) at count 1, making a false statement to a government official, in violation of 18 U.S.C. § 1001; (2) at count 2, possession of a firearm by an illegal alien, in

1

violation of 18 U.S.C. § 922(g)(5)(A); and (3) at count 3, possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

The criminal charges against Mosqueda stem from an incident in Clairton, Pennsylvania on September 3, 2015 in which Aaron Barrow was shot to death. Officers recovered eighteen shell casings, five firearms, and numerous indicia of heroin manufacturing, including 13,000 empty stamp bags.

Officers detained defendant, took him to the Clairton police station and gave him Miranda warnings. Defendant signed the warnings as "Orlando Rios Olno." He told the officers that his name was Orlando Olno, he was from Puerto Rico, and he had been staying in New York and Pittsburgh, Pennsylvania. Defendant provided a United States Social Security card and a Puerto Rico birth certificate in the name of Orlando Olno. Through a fingerprint scan, officers determined that defendant's name was actually Jaime Mosqueda, a/k/a Jorge Antonio Collazo; he was a citizen of Colombia; and he was previously deported.

Mosqueda admitted that he was involved in the incident in which Barrow was killed. Two other individuals and he were in the residence smoking marijuana when they heard sounds coming from the second floor. Mosqueda told "Ifi" to grab the "chopper" (a sawed-off shotgun). Mosqueda grabbed a .380 caliber firearm, went to the bottom of the stairs, turned a light on and saw an unknown male at the top of the stairs who began to run down while shooting a gun. Mosqueda stated that he fired four times and the intruder ran back upstairs. Mosqueda then left and was stopped a short time later by police.

The officers interviewed Anthony Gardner, who testified that he was in the residence with "Bo," whom he described as paralyzed and confined to a wheelchair. It is reasonable to infer that "Bo" is Mosqueda, who has been confined to a wheelchair since he was

shot by a DEA agent in Houston, Texas in 2001. Gardner stated that "Bo" had a firearm in his lap and always has a firearm on his person. The coroner determined that Barrow was killed by .380 caliber bullets, which was the firearm used by Mosqueda. That firearm was also involved in an assault sixty-three days earlier.

As a result of the incident, Mosqueda faced numerous criminal charges in state court. He was not charged with homicide as investigators concluded that he acted in self-defense. Mosqueda was convicted after a bench trial of use/possession of drug paraphernalia and False ID to law enforcement officer and sentenced to three to nine months of incarceration. Mosqueda was found not guilty of the gun charges. The Bureau of Immigration and Customs Enforcement ("ICE") filed a detainer.

Mosqueda has several prior drug-related convictions, including a 188-month sentence for aiding/abetting possession with intent to distribute fifty grams or more of crack cocaine and illegal alien in possession of a firearm. His criminal history indicates use of several aliases and he has a prior conviction for failure to ID/fugitive from justice. Mosqueda was on supervised release at the time of the incident. He was sentenced to six months imprisonment for the supervised release violations by the federal district court for the Southern District of Texas.

Pretrial services prepared a report which concluded that there were no conditions that will reasonably assure the appearance of Mosqueda at trial and protect the safety of the community. A detention hearing was held on July 13 and 18, 2017. At the hearing, the magistrate judge determined that defendant posed a risk of flight and was a danger to the community and entered an order of detention for defendant pending trial.

After defendant moved to revoke the order of detention, this court held a *de novo* hearing on October 2, 2017. Mosqueda would like to be released to return to Houston, Texas,

where his common law wife and two-year-old son reside. His wife is a legal resident of the United States and is willing to serve as a third-party custodian for defendant and permit him to live with her if he is released on bond. There are no firearms in the home. Mosqueda argues that he cannot flee to Colombia because he would be killed if he returns. He filed an asylum petition and a hearing is scheduled for November 17 and December 5, 2017, in Texas. He contends that conditions of home confinement and electronic monitoring are sufficient to alleviate concerns about flight risk and safety to the community and would enable him to participate in the asylum hearing. After reviewing the transcript of the detention hearing held by the magistrate judge, and taking into consideration the pretrial services report, as well as the arguments and evidence presented by the parties at the hearing held on October 2, 2017, the court denied defendant's request for bond.

II. DISCUSSION

The court's standard of review of a magistrate judge's denial of pretrial detention is *de novo*. United States v. Delker, 757 F.2d 1390, 1394 (3d Cir. 1985). The structured system of the Bail Reform Act, 18 U.S.C. § 3141 et seq., regarding the release or detention of a defendant before trial seeks to ensure that the interests of the defendant and the public are carefully considered and contemplated before release or detention is ordered. The court is charged with holding a hearing to determine whether there exists "any condition or combination of conditions set forth in [18 U.S.C. § 3142(c)] that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Section 3142(c)(1)(B) of the Bail Reform Act sets forth a nonexclusive list of conditions that a court may impose upon granting a defendant's motion for pretrial release. If the

4

court determines no sufficient condition or combination of conditions exists, however, the court may order that a defendant be detained without bail pending trial.

In this case, the parties agree that the rebuttable presumption in 18 U.S.C. § 3142(e)(3) does not apply. The government, therefore, bears the burden to prove risk of flight justifying pretrial detention by the preponderance of the evidence standard. The government must demonstrate danger to the community justifying pretrial detention by the clear and convincing standard. United States v. Himler, 797 F.2d 156, 160-61 (3d Cir. 1986).

The court must weigh the four factors set forth in § 3142(g) in determining whether pretrial detention is warranted. The four factors are:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including-

   a. the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

   b. whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

A. Risk of Flight

The government proved by a preponderance of the evidence that defendant poses a significant risk of flight. "The purpose of a Section 3142(g) risk of flight determination…is to secure the appearance of the accused at trial. Himler, 797 F.2d at 161-62 (citing United States v. Maull, 773 F.2d 1479 (8th Cir. 1989) (risk of flight shown by prior attempt to leave the country in order to flee prosecution); United States v. Vortis, 785 F.2d 327 (D.C. Cir. 1986) (risk of flight shown by possession of fraudulent passports and a planned trip to Liberia)).

The nature of the offense demonstrates that Mosqueda has the ability to obtain false identification documents and the intent to use such documents to conceal his true identity. He possessed a fake birth certificate and a fake social security card in another name, which would have enabled him to flee the country. Mosqueda obviously was able to illegally enter the country. He used numerous aliases in the past. Given Mosqueda's extensive criminal history, he faces a potentially lengthy prison sentence on the pending charges filed against him. The weight of the evidence against Mosqueda in this case is overwhelmingly strong. It is essentially indisputable that he was illegally in the United States, was previously convicted of a felony, possessed a firearm, and provided false identification documents to law enforcement agents. With respect to defendant's history and characteristics, it is evident that he lacks respect for the law, that he has a lengthy criminal history involving drugs and guns, and that his family ties are not strong enough to ensure that he will remain in Houston. Defendant introduced no evidence to explain why he was in Western Pennsylvania or how long he had been here. He did not disclose the existence of his wife and child in Houston to the officers investigating the shooting. As noted above, his conduct during the incident violated the terms of his supervised release, for which he was sentenced to a new term of imprisonment. There is no evidence that Mosqueda

would be any more compliant with the conditions of pretrial release that may be imposed in this case. As will be discussed more thoroughly below, he has a long history of involvement with drugs and guns, which is a dangerous combination. The court concludes, after considering the record as a whole and the § 3142(g) factors, that the government proved that Mosqueda presents a flight risk that cannot be addressed by any combination of conditions of release.

B. Danger to the Community

Safety of the community is implicated not only by violence, but also by narcotics trafficking. In cases involving drug offenses, the danger to the community is the likelihood that the defendant will, if released, traffic in illicit drugs. United States v. Perry, 788 F.2d 100, 111 (3d Cir. 1986). The combination of drugs and guns constitutes a very serious danger to the community. United States v. Pitts, Crim. No. 09–204, 2010 WL 3303800, at *4–5 (W.D. Pa. Aug. 19, 2010) ("Several district courts have found that the combination of guns and drugs constitutes a danger to the community.") (citing United States v. Levy, Crim. No. 08–393, 2008 WL 4978298, at *2 (E.D. Pa. Nov. 20, 2008); United States v. Miller, Crim. No. 10–4058, 2010 WL 3035753, at *4 (N.D. Iowa Aug. 3, 2010); United States v. Francis, Crim. No. 01−60, 2001 WL 899635, at * 5 (S.D. Ind. June 8, 2001)).

Mosqueda argues that confinement to a wheelchair and relocation to a home with his family in Houston in which no guns are present provide adequate assurance of safety to the community. Mosqueda points out that he was not the original target and did not fire any shots during the 2001 incident in which he was shot by a DEA agent and that he acted in self-defense in the 2015 incident in Clairton. Mosqueda also contends that there is no clear and convincing evidence that he possessed drugs during the 2015 incident.

7

The court is persuaded that the government presented clear and convincing evidence that no condition or combination of conditions would reasonably ensure the safety of the community if defendant were to be released. 18 U.S.C. 3142(f). Although no drugs were recovered from the Clairton apartment, there were substantial indicia of heroin manufacturing activities. Mosqueda's confinement to a wheelchair did not prevent him from traveling to western Pennsylvania and situating himself in close proximity to guns and drug-related paraphernalia. He has no legitimate employment and provided no explanation for his presence there. As noted above, the evidence against him is strong and he has demonstrated a lack of respect for the law. He has a criminal history involving drugs and guns. A witness to the Clairton incident informed officers that Mosqueda always has a firearm. The nature and seriousness of the danger to the community if defendant is released weighs against a finding that defendant should be released pending trial. The combination of drugs and firearms is serious. Firearms are part of the underlying offenses, but this case does not involve mere possession of a gun. The evidence shows that Mosqueda actually shot and killed a person in the Clairton incident.

After considering the record as a whole, including consideration of the nature and circumstances of the offenses charged, the strong weight of evidence presented by the government, the history and characteristics of defendant, and the nature and seriousness of danger to the community posed by defendant's release, there is no condition or set of conditions which would reasonably assure that defendant would not pose a danger to the community while on release pending trial. The government met its burden by clear and convincing evidence.

Mosqueda's reliance on the decision in United States v. Hernandez-Bourdier, Crim. No. 16-222, 2017 WL 56033 (W.D. Pa. Jan. 5, 2017), is misplaced. Hernandez-Bourdier,

among other things, had gainful employment, no criminal or violent history, strong family ties and surrendered his (real) passport.  The court will, therefore, enter an order of detention for Mosqueda pending trial.

V. CONCLUSION

The government met its burden to show by a preponderance of the evidence that defendant is a risk of flight, and it met its burden to show by clear and convincing evidence that defendant poses a risk of danger to the community if released prior to trial.  Defendant's motion to revoke detention order with citation of authorities (Crim. No. 16-233, ECF No. 29; Crim. No. 17-98, ECF No. 41) will, therefore, be DENIED.  An appropriate order will be entered.

Dated:   November 7, 2017                                    /s/ JOY FLOWERS CONTI
                                                                                      Joy Flowers Conti
                                                                                      Chief United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| | ) **Criminal Nos. 16-233 and 17-98** |
| v. | ) |
| | ) |
| **JAIME MOSQUEDA,** | ) |
| | ) |
| Defendant. | ) |

## ORDER

And now, this 7th day of November, 2017, in accordance with the accompanying memorandum opinion, Defendant's motion to revoke detention order with citation of authorities (Crim. No. 16-233, ECF No. 29; Crim. No. 17-98, ECF No. 41) is DENIED. Defendant shall be detained pending trial and committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, to persons awaiting or serving sentences or being held in custody pending appeal.

IT IS FURTHER ORDERED that defendant shall be afforded reasonable opportunity for private consultation with his attorney.

IT IS FINALLY ORDERED that, upon order of the court or upon request of an attorney for the government, a person in charge of the correctional facility in which the defendant is confined shall deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Chief United States District Judge